# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

---

**KENNETH H. NIEMER,**

    **Plaintiff,**

  **v.**                                              **Case No. 19-CV-627**

**ANDREW M. SAUL,**
**Commissioner of Social Security,**

    **Defendant.**

---

## DECISION AND ORDER

---

Kenneth H. Niemer seeks judicial review of the final decision of the Commissioner of the Social Security Administration denying his claim for a period of disability and disability insurance benefits under the Social Security Act, 42 U.S.C. § 405(g). For the reasons below, the Commissioner's decision is affirmed.

## BACKGROUND

Niemer filed an application for a period of disability and disability insurance benefits alleging disability beginning on October 9, 2015 due to neuropathy. (Tr. 235.) Niemer's application was denied initially and upon reconsideration. (Tr. 15.) Niemer filed a request for a hearing and a hearing was held before an Administrative Law Judge ("ALJ") on May 3, 2018. (Tr. 29–61.) Niemer testified at the hearing, as did Steven B. Davis, a vocational expert. (Tr. 29.)

In a written decision issued June 18, 2018, the ALJ found that Niemer had the severe impairments of status post bilateral tarsal tunnel release, bilateral carpal tunnel syndrome, and obesity. (Tr. 17.) The ALJ further found that Niemer did not have an impairment or

combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. pt. 404, subpt. P, app. 1 (the "listings"). (Tr. 18.) The ALJ found that Niemer had the residual functional capacity ("RFC") to perform a reduced range of sedentary work. (*Id.*) Specifically, he could occasionally climb ramps or stairs, stoop, kneel, crouch, or crawl. (*Id.*) Niemer was precluded from climbing ladders, ropes, or scaffolds. (*Id.*) Niemer was limited to frequently handling and fingering bilaterally and avoiding concentrated exposure to extreme cold and excessive vibration. (*Id.*)

While the ALJ found that Niemer was unable to perform any of his past relevant work as a plate mounter, forklift truck driver, and heavy equipment operator, the ALJ found that given Niemer's age, education, work experience, and RFC, jobs existed in significant numbers in the national economy that he could perform. (Tr. 23–24.) As such, the ALJ found that Niemer was not disabled from his alleged onset date until the date of the decision. (Tr. 24.) The ALJ's decision became the Commissioner's final decision when the Appeals Council denied Niemer's request for review. (Tr. 1–5.)

## DISCUSSION

### 1. *Applicable Legal Standards*

The Commissioner's final decision will be upheld if the ALJ applied the correct legal standards and supported his decision with substantial evidence. 42 U.S.C. § 405(g); *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011). Substantial evidence is not conclusive evidence; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schaaf v. Astrue*, 602 F.3d 869, 874 (7th Cir. 2010) (internal quotation and citation omitted). Although a decision denying benefits need not discuss every piece of evidence, remand is appropriate when an ALJ fails to provide adequate support for the conclusions

drawn. *Jelinek*, 662 F.3d at 811. The ALJ must provide a "logical bridge" between the evidence and conclusions. *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000).

The ALJ is also expected to follow the SSA's rulings and regulations in making a determination. Failure to do so, unless the error is harmless, requires reversal. *Prochaska v. Barnhart*, 454 F.3d 731, 736–37 (7th Cir. 2006). In reviewing the entire record, the court does not substitute its judgment for that of the Commissioner by reconsidering facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility. *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998). Finally, judicial review is limited to the rationales offered by the ALJ. *Shauger v. Astrue*, 675 F.3d 690, 697 (7th Cir. 2012) (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 93–95 (1943); *Campbell v. Astrue*, 627 F.3d 299, 307 (7th Cir. 2010)).

2. *Application to this Case*

Niemer's allegedly disabling symptoms stem from three conditions affecting his upper and lower extremities: tarsal tunnel syndrome, carpal tunnel syndrome, and small fiber neuropathy. Although these conditions affect different parts of the body, all three conditions can cause pain, numbness, tingling, and burning.[1] Regarding his lower extremities, Niemer testified that he has burning, aching, and pain in both of his feet that prevents him from standing for more than five minutes. (Tr. 38, 41–42.) When asked whether he could perform work that allowed him to sit for most, if not all, of the day, Niemer testified that the numbness

---

[1] Tarsal tunnel syndrome can cause pain, numbness, or tingling anywhere along the tibial nerve, but it is common to feel pain in the sole of the foot or inside the ankle. https://www.healthline.com/health/tarsal-tunnel-syndrome (last visited Feb. 4, 2020). Carpal tunnel syndrome causes numbness, tingling and other symptoms in the hand and arm. https://www.mayoclinic.org/diseases-conditions/carpal-tunnel-syndrome/symptoms-causes/syc-20355603 (last visited Feb. 4, 2020). Small fiber neuropathy is a condition that occurs when the small fibers of the peripheral nervous system are damaged. https://www.healthline.com/health/small-fiber-neuropathy (last visited Feb. 4, 2020). These small fibers in the skin relay sensory information about pain and temperature. *Id.* The condition causes sensory symptoms such as pain, burning, and tingling and the symptoms often start in the feet and progress up the rest of the body. *Id.*

and pain in his hands would prevent him from doing the job. (Tr. 43, 45–47.) While the ALJ credited Niemer's allegations of pain and reduced sensation in his feet and ankles, the ALJ found that the RFC, which limited Niemer to a reduced range of sedentary work, sufficiently accounted for his alleged limitations. (Tr. 20.) The ALJ found that the record did not warrant greater restrictions because Niemer's physical examinations consistently showed full strength in both lower extremities, normal gait, no atrophy, intact coordination, and intact sensation to vibration and temperature. (*Id.*)

Niemer challenges the ALJ's reliance on Niemer's relatively normal lower extremity examinations to discount the severity of his small fiber neuropathy. He states that the ALJ "played doctor" because he had no medical basis to establish that small fiber neuropathy would even cause an abnormal gait, atrophy, or a loss of strength. (Pl.'s Br. at 12–20, Docket # 17; Pl.'s Reply Br. at 3–4, Docket # 22.) The crux of Niemer's argument is that the ALJ erred in finding that his small fiber neuropathy was a non-severe impairment and in his failure to consider the symptoms the condition caused. (*See* Pl.'s Br. at 12 ("The ALJ did not find the condition severe, did not specifically address limitations for the condition in [his] decision, and spent a considerable amount of the decision minimizing the condition.").)

Niemer's argument, however, misses a critical point: he suffers from both tarsal tunnel syndrome and small fiber neuropathy and both of these conditions cause essentially the same symptoms. Niemer alleges that the burning, aching, pain, and loss of sensation in both of his feet prevents him from standing for more than a few minutes. (Tr. 38, 41–42.) But these are also symptoms of tarsal tunnel syndrome, which the ALJ did find to be severe and whose effects—burning, aching, pain, and loss of sensation—the ALJ did address. The ALJ credited Niemer's alleged difficulties standing due to his pain and reduced sensation in his feet and

4

ankles. (Tr. 19.) The ALJ explained that he was limiting Niemer to sedentary work to accommodate these symptoms and was further limiting him to occasional climbing of ramps and stairs, stooping, crouching, and crawling to avoid exacerbation of his feet symptoms. (Tr. 20.) The ALJ further explained that due to Niemer's reduced sensation and several record instances of abnormal gait, Niemer must never climb ladders, ropes, or scaffolds and avoid concentrated exposure to extreme cold and excessive vibration. (*Id.*) While Niemer asserts that the ALJ did not specifically address his limitations from small fiber neuropathy, Niemer points to no additional symptoms the ALJ failed to consider. So long as the ALJ properly considered all of Niemer's alleged disabling symptoms in formulating the RFC, it matters little which impairment the symptoms stemmed from. *See Masch v. Barnhart*, 406 F. Supp. 2d 1038, 1054 (E.D. Wis. 2005) (because an ALJ must consider both severe and non-severe impairment when addressing a claimant's RFC, any error at step two of the five-step disability analysis is likely harmless so long as the ALJ fulfills his obligation at step four). I conclude that any error in this regard was harmless.

Niemer takes issue with the ALJ's reliance on objective medical evidence showing normal gait and station, full strength in the bilateral lower extremities, and no muscle atrophy to discount his symptoms of disabling pain. However, the ALJ's consideration of this evidence is relevant and reasonable here. As stated in Social Security Ruling 16-3p, "objective medical evidence is a useful indicator to help make reasonable conclusions about the intensity and persistence of symptoms." In fact, SSR 16-3p provides an example directly relevant to Niemer's allegations. SSR 16-3p states that a person who indicates that pain over the last year "has limited his or her standing and walking to no more than a few minutes a day would be expected to have some signs of muscle wasting as a result" and if he does not, this is one factor

5

the ALJ can consider in evaluating the intensity, persistence, and limiting effects of the person's symptoms. SSR 16-3p. Niemer testified that he cannot stand for more than five minutes and can walk only to the bathroom due to foot pain. (Tr. 41–42.) Thus, the ALJ properly considered the inconsistency between Niemer's testimony and the objective medical evidence in concluding that the record did not support greater restrictions in the RFC than the ALJ assigned.

The record evidence fully supports the ALJ's RFC determination. Beyond the objective medical evidence demonstrating normal gait and station, full bilateral lower extremity strength, and no muscle atrophy, Niemer frequently stated to his medical providers that he felt no discomfort while sitting and only experienced pain with prolonged standing. (Tr. 427, 431, 454–56.) His treating nurse practitioner Cathy Shine stated that she had Niemer off work because his job required him to stand all day. (Tr. 460.) Shine recommended that Niemer "see if his company has something where he could sit." (*Id.*) The ALJ assigned great weight to Shine's opinion, which he found strongly suggested a capacity for sedentary work that was consistent with the overall record. (Tr. 22.) Niemer himself testified that if he was offered a job where he could sit most of the day, it was not his feet, but his hands, that would prevent him from working the job. (Tr. 43.) However, Niemer does not challenge the ALJ's findings regarding his upper extremity limitations. For these reasons, the Commissioner's decision is affirmed.

## CONCLUSION

Niemer alleges the ALJ erred in his assessment of Niemer's small fiber neuropathy. I find the ALJ's decision supported by substantial evidence. Therefore, the Commissioner's decision is affirmed.

6

**ORDER**

**NOW, THEREFORE, IT IS ORDERED** that the Commissioner's decision is **AFFIRMED**.

**IT IS FURTHER ORDERED** that this action is **DISMISSED**. The Clerk of Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 4th day of February, 2020.

BY THE COURT

*s/ Nancy Joseph*
NANCY JOSEPH
United States Magistrate Judge